Filed 10/8/20; Certified for Publication 10/29/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C089368 |
| Plaintiff and Respondent, | (Super. Ct. No. P18CRF0390) |
| v. | |
| REFFIGLIA LORRAINE PACK-RAMIREZ, | |
| Defendant and Appellant. | |

Defendant Reffiglia Lorraine Pack-Ramirez pled no contest to a felony count of identifying information theft with a prior. (Pen. Code, § 530.5, subd. (c)(2).)[1] The court sentenced defendant to the upper term of 3 years in county jail. The court also ordered her to pay a $600 restitution fine under section 1202.4, subdivision (b); a $619.86 victim restitution payment under section 1202.4, subdivision (f); a $40 court operations assessment under section 1465.8; a $30 court facilities assessment under Government

---

[1] Undesignated statutory references are to the Penal Code.

1

Code section 70373; and a $109.50 fee for the cost of preparing the probation report under section 1203.1b.

On appeal, defendant contends we should conditionally reverse the judgment and remand for a hearing on her eligibility for primary caregiver diversion under newly enacted section 1001.83. She also alleges the court violated her right to due process by imposing the above-mentioned amounts without first determining her ability to pay them. We will affirm the judgment but direct the court to correct the abstract of judgment and sentencing minute order to reflect a $600 restitution fine under section 1202.4, subdivision (b).

## I. DISCUSSION

### A. *Pretrial Diversion for Primary Caregivers*

Section 1001.83 went into effect on January 1, 2020, during the pendency of this appeal. It provides, in part, that "[t]he presiding judge of the superior court, or a judge designated by the presiding judge, in consultation with the presiding juvenile court judge and criminal court judges, and together with the prosecuting entity and the public defender or the contracted criminal defense office that provides the services of a public defender, may agree in writing to establish and conduct a pretrial diversion program for primary caregivers, pursuant to the provisions of this chapter, wherein criminal proceedings are suspended without a plea of guilty for a period of not less than 6 months and not more than 24 months." (§ 1001.83, subd. (a).) The diversion program may include components such as parenting classes, counseling, mental health services, and drug and alcohol treatment. (*Id*., subd. (b).)

Pretrial diversion under section 1001.83 is not automatically granted to individuals who meet all of its requirements: "On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant pursuant to this section if the defendant meets all of the following requirements:

2

"(1) The defendant is a custodial parent or legal guardian of a minor child under 18 years of age, presently resides in the same household as that child, presently provides care or financial support for that minor child either alone or with the assistance of other household members, and the defendant's absence in the child's life would be detrimental to the child.

"(2) The defendant has been advised of and waived the right to a speedy trial and a speedy preliminary hearing.

"(3) The defendant has been informed of and agrees to comply with the requirements of the program.

"(4) The court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, or to the minor child in their custody, if allowed to remain in the community.  The court may consider the positions of the prosecuting entity and defense counsel, the defendant's violence and criminal history, the recency of the defendant's criminal history, the defendant's history of behavior towards minors, the risk of the dependent minor's exposure to or involvement in criminal activity, the current charged offense, child welfare history involving the defendant, and any other factors that the court deems appropriate.

"(5) The defendant is not being placed into a diversion program, pursuant to this section, for any serious felony as described in Section 1192.7 or 1192.8 or violent felony as described in subdivision (c) of Section 667.5.

"(6) The defendant is not being placed into a diversion program pursuant to this section for a crime alleged to have been committed against a person for whom the defendant is the primary caregiver."  (§ 1001.83, subd. (d).)

If the defendant is subsequently convicted of a felony or an offense "that reflects a propensity for violence," or otherwise performs unsatisfactorily in the assigned program, the court may reinstate criminal proceedings.  (§ 1001.83, subd. (f).)  "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court

shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id*., subd. (g).) Further, use of the records of the arrest shall be limited. (*Id*., subd. (h).)

### 1. *A Certificate of Probable Cause Was Not Required*

The People argue we should dismiss this portion of defendant's appeal because she did not seek or obtain a certificate of probable cause under section 1237.5. We disagree. "[S]ection 1237.5 admits of this exception: The defendant may take an appeal without a statement of certificate grounds or a certificate of probable cause if he does so solely on noncertificate grounds, which go to postplea matters not challenging his plea's validity . . . ." (*People v. Mendez* (1999) 19 Cal.4th 1084, 1096.)

Our Supreme Court recently held that a defendant who had entered into a plea agreement for a specified term that included a prior serious felony enhancement was not required to obtain a certificate of probable cause to claim on appeal that a new law permitting the trial court to strike the enhancement in furtherance of justice applied to him retroactively. (*People v. Stamps* (2020) 9 Cal.5th 685, 692.) The People contend this line of authority is inapplicable because this "is not a sentencing case, and [defendant] seeks the complete reversal and vacation of her conviction. This aspect of her case necessarily implicates the validity of her plea." While defendant's claim certainly has implications for her plea, we disagree that it implicates the *validity* of her plea. As our Supreme Court explained in *Stamps*, the defendant's "appellate claim does not constitute an attack on the validity of his plea because the claim does not challenge his plea as defective when made." (*Id*. at p. 696.) Nonetheless, as in *Stamps*, we must now address the merits of defendant's retroactivity claim and the proper remedy. (*Id*. at p. 698.)

### 2. *Retroactivity*

Defendant contends we should conditionally reverse and remand for a hearing on her eligibility for primary caregiver diversion under section 1001.83. "Defendant's

4

argument relies on the principle articulated in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*): '[A]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date' [citation], unless the enacting body 'clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent' [citations]." (*People v. DeHoyos* (2018) 4 Cal.5th 594, 600.)

Since the completion of briefing, our Supreme Court decided in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*) that section 1001.36, which creates a pretrial diversion program for certain defendants with mental health disorders, applied retroactively to cases in which the judgment was not yet final. (*Frahs, supra,* at p. 624.) The court's conclusion was based on the fact that section 1001.36 offers a potentially ameliorative benefit for a class of individuals "by offering an opportunity for diversion and ultimately the dismissal of charges," (*Frahs, supra,* at p. 624) the statute does not contain an express savings clause that limits the program to prospective-only application, and the Legislature did not clearly signal its intent to overcome the "*Estrada* inference" that it applies retroactively to all cases not yet final on appeal (*id.* at pp. 631-632). Section 1001.83 offers a similar potentially ameliorative benefit for a class of individuals and also lacks an express savings clause. As to whether the Legislature clearly signaled its intent to overcome the *Estrada* inference, the People's arguments in this appeal are like those raised in *Frahs*. The People contend the language and structure of the primary caregiver diversion statute indicates the Legislature did not intend it to apply to an individual, such as defendant, who has already pled guilty. Specifically, the People observe section 1001.83 creates a procedure for *pretrial* diversion and sets forth procedures that operate accordingly. However, in *Frahs*, our Supreme Court explained that "in providing instructions regarding how its provisions are meant to operate generally, section 1001.36 does not rebut the *Estrada* inference of ameliorative retroactivity." (*Frahs, supra*, at p. 634.) Further, "[t]he potential logistical problems identified by the People in providing

5

defendants with a diversion eligibility hearing after conviction . . . do not provide a sufficient basis to deny defendants the benefit of a hearing altogether." (*Id*. at p. 636.) The retroactive application of the statute in this case is, however, merely theoretical because its provisions do not appear to have been utilized by El Dorado County.

### 3. Remand Not Required

We will not remand for a hearing on defendant's eligibility for primary caregiver diversion where to do so would be an idle act. (See *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409 [conditional remand for mental health diversion eligibility hearing not required where trial court's comments clearly indicated it would not find defendant eligible].) As the People note, there is no evidence El Dorado County has created a primary caregiver diversion program under section 1001.83, and defendant does not suggest otherwise. Rather, she counters that, regardless, section 1001.83, subdivision (c) authorizes placement in existing programs. We disagree.

" 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' " (*Bruns v. E-Commerce Exchange, Inc*. (2011) 51 Cal.4th 717, 724.) Section 1001.83 begins by providing discretion for the creation of a pretrial diversion program for primary caregivers upon the written agreement of "[t]he presiding judge of the superior court, or a judge designated by the presiding judge, in consultation with the presiding juvenile court judge and criminal court judges, and together with the prosecuting entity and the public defender or the contracted criminal defense office that provides the services of a public

6

defender."[2] (§ 1001.83, subd. (a).)  Subdivision (b) provides that "[t]he program described in this section may include, but not be limited to" various specified components including parenting classes, counseling, mental health services, and drug and alcohol treatment.  Subdivision (c), upon which defendant relies, states that "[t]he defendant may be referred to supportive services and classes in already existing diversion programs and county outpatient services."  Read in context, subdivision (c) does not authorize diversion of primary caregivers into existing programs where there is no agreement for pretrial diversion as specified in subdivision (a).  Thus, a conditional remand for a hearing on defendant's eligibility for a program that does not exist would be an idle act.[3] Accordingly, we must decline defendant's request for a conditional reversal.

B.     *Ability to Pay*

At sentencing, the trial court ordered defendant to pay a $600 restitution fine under section 1202.4, subdivision (b); a $619.86 victim restitution payment under section 1202.4, subdivision (f); a $40 court operations assessment under section 1465.8; a $30 court facilities assessment under Government Code section 70373; and a $109.50 fee for the cost of preparing the probation report under section 1203.1b.  The minutes and the abstract of judgment reflect a $300 restitution fine under section 1202.4, subdivision (b), but the oral pronouncement of judgment controls over the minutes and abstract of judgment.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)  As such, we will order

---

[2]  Section 1001.36, in contrast, contains no such provision.

[3]  The People describe defendant's claim of eligibility as "barely colorable" based on the record before us and argue the record supports the conclusion that the superior court would not have granted pretrial diversion even if it had been available.  Defendant contends the record does not clearly establish her ineligibility nor does it clearly indicate the court would have refused diversion based on the statutory considerations.  In light of our conclusion, we need not resolve this dispute or decide what evidence must be in the record to warrant a conditional remand under section 1001.83.

the trial court to correct the minutes and abstract of judgment. On appeal, defendant argues the court violated her right to due process by imposing these amounts without first determining her ability to pay them. The People state that "it does not appear on this record that [defendant] had much, if any, ability to pay the fines and fees imposed. But it is unclear from the record whether she has the ability to work in some fashion and earn wages, notwithstanding her receipt of SSI benefits."[4] The People concede that a hearing on defendant's ability to pay is warranted on this record. We do not accept the People's concession.

Defendant's argument relies primarily on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). The *Dueñas* court held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." (*Id*. at p. 1164.) The *Dueñas* court also held "that although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of *any* restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*., italics added.)

*Dueñas* did not involve a restitution fine above the statutory minimum under section 1202.4, subdivision (b), a victim restitution payment under section 1202.4, subdivision (f), or the cost of preparing a probation report pursuant to section 1203.1b, all

---

[4] The probation report indicated defendant said she has never held formal employment, but she hoped to continue her education and possibly attend cosmetology school. Her counsel argued at sentencing, "I think we have a cycle of drug use, theft. It does seem to be a cycle of poverty. I mean, we don't have anything that shows she is a—some sort of sophisticated dealer of identifying information. If she were, she probably wouldn't have her products in a couple of trash bags in a beat up car . . . ."

8

of which were imposed by the trial court here. The principles articulated in *Dueñas* have not been extended to a victim restitution payment under section 1202.4, subdivision (f). (See *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338 ["*Dueñas* does not apply to victim restitution under section 1202.4, subdivision (f)"]; *People v. Evans* (2019) 39 Cal.App.5th 771, 777 ["Based on the significant differences in purpose and effect between victim restitution and the moneys at issue in *Dueñas*, we decline to extend the rule of *Dueñas* to victim restitution"].) As to the restitution fine, section 1202.4 allows consideration of a defendant's ability to pay when determining whether to increase the restitution fine above the statutory minimum of $300. (§ 1202.4, subd. (c).) Similarly, section 1203.1b sets forth specific procedures for determining a defendant's ability to pay for all or part of a probation report fee.[5] Thus, defendant could have objected to these fees and fines based on inability to pay but failed to do so, and our Supreme Court has previously explained that this failure forfeits an appellate challenge based on the ability to pay. (*People v. Trujillo* (2015) 60 Cal.4th 850, 859; *People v. Nelson* (2011) 51 Cal.4th 198, 227; *People v. Avila* (2009) 46 Cal.4th 680, 729.) Defendant contends that if we conclude she forfeited her claim on appeal, her trial counsel's failure to object was ineffective assistance. We do not conclude any part of her claim is forfeited, but we do observe that *Dueñas* does not appear to be fully supportive of it. Regardless, we are not persuaded that the analysis used in *Dueñas* is correct.

Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and

---

[5] As to this fee, the trial court did expressly find defendant had an ability to pay.

Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp, supra*, at pp. 95-96.)

In the meantime, we join those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments discussed in *Dueñas*. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279-282; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326-329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Defendant's claim pursuant to *Dueñas* is without merit.

Defendant argues that remand for a further hearing is necessary even if we view the question as arising under the state and federal constitutional provisions barring excessive fines. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) We disagree.

"The Eighth Amendment prohibits the imposition of excessive fines. The word 'fine,' as used in that provision, has been interpreted to be ' "a payment to a sovereign as punishment for some offense." ' " (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1040 (conc. opn. of Benke, J.).)

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334, superseded on other grounds as explained in *United States v. Toro-Barboza* (9th Cir. 2012) 673 F.3d 1136, 1154.) "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." (*Ibid.*) To determine whether a fine is excessive in violation of the Eighth Amendment, we consider: "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.) Accordingly, although ability to pay is part of

10

the proportionality analysis, it is not the only factor. Defendant argues she did not commit a serious or violent felony, and contends the record shows she lacks the ability to pay the fines and fees. We cannot conclude on this record that the fines imposed were grossly disproportionate to the gravity of the identity theft offense. Furthermore, we disagree with the suggestion that the Eighth Amendment requires a determination of ability to pay before the imposition of any fee, fine, or victim restitution or authorizes a remand to revisit the fees, fines, and victim restitution imposed in this case.

### III. DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment and sentencing minute order to reflect a $600 restitution fine under section 1202.4, subdivision (b). The court shall forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


/S/

RENNER, J.



I concur:


/S/

HOCH, Acting P. J.


11

Krause, J., Concurring.

I join the opinion and its result, with one exception. I find it unnecessary on this record to reach the issue, addressed in part I.A.2 of the opinion, of whether Penal Code section 1001.83 is retroactive.

/S/

_____

KRAUSE, J.

1

Filed 10/29/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C089368 |
| Plaintiff and Respondent, | (Super. Ct. No. P18CRF0390) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| REFFIGLIA LORRAINE PACK-RAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Kenneth J. Melikian, Judge.  Affirmed.

C. Athena Roussos, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, Nirav K. Desai, Deputy Attorneys General, for Plaintiff and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed October 8, 2020, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

FOR THE COURT:

/S/

_____
HOCH, Acting P. J.

/S/

_____
RENNER, J.

/S/

_____
KRAUSE, J.